IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CEDAR BAYOU TOWING | § | |
| LIMITED COMPANY | § | |
| | § | Civil Action No.: H-16-2910 |
| v. | § | ADMIRALTY |
| | § | |
| GSD MARINE, LLC, ET AL | § | |

**THE CONTINENTAL INSURANCE COMPANY'S RULE 12(C) MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT**

Under the General Terms and Conditions of The Continental Insurance Company ("Continental") Policy, for there to be coverage for GSD in this case, the MOP-14 had to have been seaworthy on the day it was added to the Continental Policy. As set forth in GSD's Third Party Complaint against Continental, Plaintiff, Cedar Bayou Towing, alleges that the MOP-14 was unseaworthy. Taking that allegation as true, GSD breached the Seaworthiness Clause, resulting in no coverage under the Continental Policy. Continental is therefore entitled to judgment.

On October 14, 2015, the day the MOP-14 was added to the Continental Policy, the undisputed facts demonstrate that the MOP-14 was unseaworthy. It had failed coatings throughout, loose scale with wasted holes and a 6' x 5' hole in the barge's stern adjacent to the starboard stern cover. The manhole hatch covers were in poor condition. The internal compartments were in poor condition, with heavy corrosion and wastage throughout the lower areas of the interior of the barge. Further, the transverse watertight bulkheads were also compromised by heavy corrosion and wasted holes in the lower two feet of the watertight bulkheads.

The MOP-14 was unseaworthy as a matter of law and was in that same condition four days later when the alleged loss occurred, on October 19, 2015. Coverage therefore

1

did not exist on October 14, 2015 because the vessel was unseaworthy, and therefore coverage did not exist four days later when the loss occurred.  For this reason, Continental does not and never will have any duty to reimburse any defense costs incurred by GSD in the defense of this case.  Continental is therefore entitled to judgment in its favor pursuant to Federal Rule of Civil Procedure Rule 12(c) or, if the Court determines appropriate, Rule 56.

**WHEREFORE**, THE CONTINENTAL INSURANCE COMPANY, respectfully submit there is not one issue of material fact and it is thus entitled judgment as a matter of law in its favor and against GSD MARINE, LLC.

Date:  July 13, 2017

Respectfully submitted,

By:    /s/ Mary K. Cryar
Mary K. Cryar (*Attorney-in-Charge*)
Louisiana Bar No. 24062
S.D. Texas Admission No. 3073961
CNA COVERAGE LITIGATION GROUP
1 Galleria Boulevard, Suite 1502
Metairie, LA 70001
(214) 220-5900 – Telephone
(504) 836-4103 - Direct Dial
(214) 220-5902 – Facsimile
mary.cryar@cna.com
– and –
Pamela Dunlop Gates
State Bar No. 06239800
S.D. Texas Admission No. 35193
CNA COVERAGE LITIGATION GROUP
Plaza of the Americas
700 North Pearl Street, Suite 450
Dallas, Texas 75201
(214) 220-5900 – Telephone
(214) 220-5921 – Direct Dial
(214) 220-5902 – Telecopy
pamela.dunlopgates@cna.com
**ATTORNEYS FOR THE CONTINENTAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned does certify that on July 13, 2017, the foregoing *The Continental Insurance Company's Motion to Dismiss/Motion for Summary Judgment and Memorandum in Support* has been electronically filed, as required by the United States District Court for the Southern District of Texas, using the Court's CM/ECF filing system, and that service of same is made on the persons listed below via the Court's electronic filing system.

Gus David Oppermann V, Esq.
WHEAT OPPERMANN PLLC
1722 Heights Boulevard
Houston, Texas 77008
(713) 861-8585 – Telephone
(713) 861-3189 – Facsimile
gdo@wom-law.com
wberlanga@wom-law.com
**ATTORNEYS FOR THIRD-PARTY PLAINTIFF GSD MARINE, LLC**

Robert C. Oliver, Esq.
SHARPE & OLIVER, LLP
5535 Memorial Drive, Suite F570
Houston, Texas 77007
(713) 864-2221 – Telephone
(713) 864-2228 – Facsimile
macknife@macknife.net
**ATTORNEYS FOR PLAINTIFF CEDAR BAYOU TOWING LIMITED LIABILITY COMPANY**

David R. Walker, Esq.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1600 Smith Street, Suite 5000
Houston, Texas 77002–7380
(713) 224–8380 – Telephone
(713) 225-9945 – Facsimile
david.walker@roystonlaw.com
**ATTORNEY FOR DEFENDANTS, G & H TOWING COMPANY, BAY HOUSTON TOWING COMPANY AND BAY HOUSTON MARITIME INDUSTRIES, INC.**

Ronald L. White, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
909 Fannin Street, Suite 3300
Houston, Texas 77010
(713) 353–2000 – Telephone
(713) 785-7780 – Facsimile
ronald.white@wilsonelser.com
**ATTORNEYS FOR DEFENDANT BUFFALO MARINE SERVICE, INC.**

                                                                 /s/ Mary K. Cryar
                                                                      Mary K. Cryar

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CEDAR BAYOU TOWING | § | |
| LIMITED COMPANY | § | |
| | § | Civil Action No.: H-16-2910 |
| v. | § | ADMIRALTY |
| | § | |
| GSD MARINE, LLC, ET AL | § | |

**THE CONTINENTAL INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT**

GSD MARINE("GSD") seeks reimbursement from The Continental Insurance Company ("Continental") for defense costs it has incurred, and will incur, in defending against the claims brought against it by Cedar Bayou Towing Limited Company, the owners of the Annie Moon, which allegedly sank on October 19, 2015, when it was pulled down by the MOP-14, as the MOP-14 itself sank. As set forth in Cedar Bayou's Complaint and in GSD's own Third Party Complaint, Cedar Bayou seeks recovery from GSD on the basis that the MOP-14 was unseaworthy. Under the terms of the Policy, Continental only has an obligation to reimburse defense costs incurred by GSD if there is coverage under the Policy. There is no coverage under the Policy if the MOP-14 was unseaworthy because that would mean that GSD breached the express warranty of seaworthiness contained in the Policy.

As the undisputed material facts demonstrate, at the time the MOP-14 sank, on October 19, 2015, it was thoroughly unseaworthy, as it was when it was added to the Policy, four days earlier, on October 14, 2015. GSD therefore breached the Policy's expressed warranty of seaworthiness. Coverage under the Policy was thus suspended as

4

of October 14, 2015, including on October 19, 2015, which voids coverage entirely for the claims made in this case.

## UNDISPUTED FACTS

1. Continental Insurance Company issued a marine insurance policy bearing policy number H0876843 to named insured Gulf States Dredging, LLC.

   *See*, Certified Copy of Policy Number H 0876843, attached hereto as *Exhibit "A"* and referred to herein as "the Policy."

2. The Protection and Indemnity portion of the Policy, form SP-23, provides the following regarding payment of legal costs:

   > Costs and charges: (14) Costs, charges and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

   *See, Exhibit "A"*, Protection and Indemnity Part SP-23, Paragraph 14

3. The Policy provides in the General Terms and Conditions the following:

   > SEAWORTHINESS CLAUSE: Warranted that at the inception of this Policy the "Vessel(s)" shall be in a seaworthy condition, and, thereafter, during the currency of the Policy, the Assured shall exercise due diligence to keep the "Vessel(s)" seaworthy, and in all regards, fit, tight, and properly manned, equipped and supplied.

   *See, Exhibit "A"*, General Conditions.

4. On October 14, 2015, the barge named MOP-14 was added to the Policy by an October 29, 2015 Endorsement.

   *See, Exhibit "A"*, Endorsement 16.

5. On September 16, 2016, Cedar Bayou filed suit against GSD, and others, alleging that on October 19, 2015, the Tug the Annie Moon, owned by Cedar Bayou, allegedly sank while it was made up by face wires to the stern of the MOP-14, and was pulled down when the MOP-14 sank. Cedar Bayou alleges that at the time the Annie Moon sank, the MOP-14 was not seaworthy.

   *See, Complaint* filed by the Annie Moon, Docket Document No. 1.

6. On March 17, 2017, GSD filed a Third Party Complaint against Continental. *See, Third Party Complaint*, Docket Document No. 20. On April 11, 2017, GSD filed an Amended Third Party Complaint against Continental. *See, Amended Third Party Complaint*, R Docket Document No. 21. GSD alleged that Cedar Bayou claims it is liable to Cedar Bayou because the MOP-14 was not seaworthy.

7. Cory Hargis, a licensed marine surveyor, inspected the MOP-14 on two occasions, November 2, 2015 and February 16, 2016.

    *See, Affidavit of Cory Hargis*, attached hereto as *Exhibit "B"*.

8. On November 2, 2015, Hargis' inspection showed the MOP-14 had failed coatings throughout, and scattered coatings and loose scale with wasted holes in scattered locations on the man hole hatch overs, main deck and port and starboard side shell platings.

    *See, Id.*

9. Hargis' November 2, 2015 inspection also showed a 6" x 5" hole that had been intentionally cut out of the barge's stern adjacent to the starboard stern cover.

    *See, Id.*

10. Hargis' February 16, 2016, inspection showed that doubler plates had been welded post-sinking on the side shell plating; that MOP-14's internal compartments were in poor condition with heavy corrosion and wastage throughout the lower areas of the interior of the barge and that the MOP-14's transverse watertight bulkheads were also compromised by heavy corrosion and wasted hoes in the lower two feet of the watertight bulkheads.

    *See, Id.*

11. Due to the various waste holes, poor condition of the manhole hatch covers and stern long hole, the MOP-14's watertight integrity was compromised.

    *See, Id.*

12. The MOP-14's corrosion, wasted holes, loose scale, poor conditions of the manhole hatch covers and the hole in the stern all existed on October 14, 2015 and on October 19, 2015 because these conditions develop over the course of months, if not years, and would not have developed from October 14, 2015 to October 19, 2015, or in the two weeks from the time the MOP-14 sank and the time Hargis first inspected it.

    *See, Id.*

## STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(c) Standard

Rule 12(c) provides that, "… [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *See, Fed.RCiv.Pro., R. 12(c).* "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *See, Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir.1990)(*per curiam*), *citing,* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509–10 (1990)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. the Tobacco Institute, Inc.,* 278 F.3d 417, 420 (5th Cir. 2001) *quoting, St. Paul Mercury Ins. Co.,* 224 F.3d 425, 440 n. 8 (5th Cir. 2000).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *See, Id.*, *citing, Voest-Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir.1998). "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See, Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999) (*per curiam*), *citing, Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir.1990).

On a Rule 12 (c) review, the Court may look to materials outside of the pleadings and may rely upon judicially noticed facts. As observed in *Great Plains Trust Co. v.*

*Morgan Stanley Dean Witter & Co.*, "...in *Hebert,* however, we held that the district court "look[s] to the substance of the pleadings *and any judicially noticed facts.*" *Hebert,* 914 F.2d at 76 (emphasis added) [and] in *Gutierrez v. City of San Antonio,* 139 F.3d 441, 444 n. 1. (5th Cir.1998), we held that a motion had been converted to a Rule 12(c) motion *because* materials outside the pleadings had been attached to the motion. …. *See, Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).

### B. Motion for Summary Judgment Standard

While the Fifth Circuit has yet to fully reconcile the 12(c) standard, other Circuits have concluded that where the court exercises discretion and chooses to consider extrinsic materials, the motion is treated as a Rule 56 motion. *See, e.g. Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 225 (3rd Cir. 2008).

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." *See, Fed.R.Civ.P. 56(c).* The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *See, Id.* at 325. Further, because this matter was filed as an admiralty action, and neither the plaintiff, nor GSD has requested a jury, this Court will be the trier of fact, to the extent that there is the need to resolve a question of material

fact. *See, FRCP, R. Rule 38(e). And See, e.g.*, *Becker v. Tidewater, Inc.*, 405 F.3d 257 (5th Cir. 2005). *See generally*, *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 260 (3rd Cir. 1998).

## ARGUMENT

### A. The Policy does not provide for a duty to defend.

Unlike traditional liability policies, the Policy is a marine insurance policy, and, as such, does not contain a duty to defend. *See, Gabarick v. Laurin Mar. Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011). Rather, the Policy is an indemnity only policy.

Although the Policy provides for the payment of defense costs, payment of defense costs is in the form of reimbursement only. *See, Id., Exhibit A,* Protection and Indemnity Part SP-23, Paragraph 14. Such reimbursement is subject to the indemnity limits, and Continental only has the obligation to reimburse GDS for defense costs if there is coverage under the Policy. *See, Id.* Because there is no possibility of coverage under the Policy, as discussed below, Continental has no duty to fund any of GSD's defense costs.

### B. GSD's breach of the Policy's Warranty of Seaworthiness Voided Coverage for the Claim

The Policy issued to GSD for the MOP-14 includes the following express warranty of seaworthiness in the general conditions applicable to the entire policy, including the Protection and Indemnity Coverage:

> SEAWORTHINESS CLAUSE: Warranted that at the inception of this Policy the "Vessel(s)" shall be in a seaworthy condition, and, thereafter, during the currency of the Policy, the Assured shall exercise due diligence to keep the "Vessel(s)" seaworthy, and in all regards, fit, tight, and properly manned, equipped and supplied.

*See, Exhibit "A"*, General Terms and Conditions).

The breach of an express warranty of seaworthiness in an insurance policy automatically suspends coverage under the policy. *See, Aguirre v. Citizens Casualty Co.*

9

*of New York*, 441 F.2d 141 (5th Cir. 1971). "The warranty of seaworthiness has generally been held to mean "that the vessel is reasonably fit for the intended use." *See, Employer's Ins. Co. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422 (5th Cir. 1992) [decided on summary judgment].

"In general, a ship must be sufficiently strong and staunch and equipped with the appropriate appurtenances to allow it to safely engage in the trade for which it was intended. Put another way, the vessel must be fit for the use anticipated." *See, Texaco v. Universal Marine, Inc.,* 400 F.Supp. 311 (E.D. La. 1975). "A ship that leaks is unseaworthy ...." *See, Castoria v. Lykes Bros. Steamship Co. Inc.,* 578 F.Supp. 1153 (S.D. Tex.1984), *citing, Gutierrez v. Waterman Steamship Corp.,* 373 U.S. 206 (1863). The courts have held that a "barge... was unseaworthy because of various leaks, holes and breaches in her hull." *See, Horton & Horton, Inc. v. T/SJ.E. Dyer,* 428 F.2d 1131 (5th Cir.1970). In deciding whether a vessel was unseaworthy at the time she set out to sea the court found that, "[s]he was unseaworthy due to a significant defect, namely a leak most likely located in the hull, somewhere at or below the water line...." *See, Windsor Mount Joy Mutual Insurance Co. v. Giragosian,* 864 F.Supp. 239 (D. Mass. 1994). *aff 'd* at 57 F.3d 50. (1st Cir. 1995).

Cedar Bayou alleges that when the MOP-14 sank she was not seaworthy. Taking this fact as true for the purpose of Rule 12(c), GSD breached the warranty of seaworthiness in the Policy, which resulted in coverage being suspended on October 19, 2015.

Likewise, the undisputed facts demonstrate that the MOP-14 was in an unseaworthy condition on the day the policy took effect for it: October 14, 2015. The MOP-14 had failed coatings throughout, loose scale with wasted holes and a 6' x 5" hole

in the barge's stern adjacent to the starboard stern cover. *See, Exhibit B*. The manhole hatch covers were in poor condition. *See, Exhibit B*. The internal compartments were in poor condition with heavy corrosion and wastage throughout the lower areas of the interior of the barge. *See, Exhibit B*. Further, the transverse watertight bulkheads were also compromised by heavy corrosion and wasted holes in the lower two feet of the watertight bulkheads. *See, Exhibit B*.

The unseaworthy structural conditions observed on the MOP-14 were neither transient nor sudden. It is indisputable that most of **t**he conditions observed, by their very nature, would have had to accrue over time. The MOP-14 was unquestionably unseaworthy on October 14, 2015, and, according to Cedar Bayou, was still unseaworthy on October 19, 2015. Accordingly, the insured violated the express warranty of seaworthiness owed to the Continental and the Policy was not in effect as to the MOP-14 on October 14, 2015, and certainly not on October 19, 2015, when the marine casualty occurred.

Therefore, there is no possibility of coverage for the claims arising out of the sinking of the MOP-14 on that date, regardless of whether the unseaworthy condition of the MOP-14 caused it to sink. *See, Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F2d 974 (5th Cir. 1969)(holding that where coverage is suspended as a result of the breach of a warranty of seaworthiness, the question of whether the seaworthiness proximately caused or contributed to the loss is irrelevant).

## *CONCLUSION*

Cedar Bayou alleges that when the MOP-14 sank, taking the Annie Moon with it, the MOP-14 was unseaworthy, which, if true, would result in no coverage under the Continental Policy. In turn, the **indisputable** material facts demonstrate that MOP-14

was unseaworthy when it was added to the policy on October 14, 2015, and, therefore, GSD was in breach of the express warranty of unseaworthiness. As a result of the breach, coverage under the policy was suspended and not in effect on October 19, 2015. Because there is no possibility of coverage under the Policy, Continental does not, and will never have, any duty to indemnify GDS against the claims made against it in this lawsuit, **and in particular, there is no obligation to reimburse GDS for defense costs under the SP-23 coverage form.** Continental is entitled to dismissal with prejudice under Rule 12(c) or, if the Court determines appropriate, summary judgment under Rule 56.

**WHEREFORE**, THE CONTINENTAL INSURANCE COMPANY, respectfully submits there is not one issue of material fact and it is thus entitled judgment as a matter of law in its favor and against GSD MARINE, LLC.

Date: July 13, 2017

Respectfully submitted,

By: ___/s/ Mary K. Cryar___
    Mary K. Cryar (*Attorney-in-Charge*)
    Louisiana Bar No. 24062
    S.D. Texas Admission No. 3073961
    CNA COVERAGE LITIGATION GROUP
    1 Galleria Boulevard, Suite 1502
    Metairie, LA 70001
    (214) 220-5900 – Telephone
    (504) 836-4103 - Direct Dial
    (214) 220-5902 – Facsimile
    mary.cryar@cna.com
    – and –
    Pamela Dunlop Gates
    State Bar No. 06239800
    S.D. Texas Admission No. 35193
    CNA COVERAGE LITIGATION GROUP
    Plaza of the Americas
    700 North Pearl Street, Suite 450
    Dallas, Texas 75201
    (214) 220-5900 – Telephone
    (214) 220-5921 – Direct Dial
    (214) 220-5902 – Telecopy
    pamela.dunlopgates@cna.com
    **ATTORNEYS FOR THE CONTINENTAL INSURANCE COMPANY**

# CERTIFICATE OF SERVICE

The undersigned does certify that on July 13, 2017, the foregoing *The Continental Insurance Company's Motion for Summary Judgment and Memorandum in Support* has been electronically filed, as required by the United States District Court for the Southern District of Texas, using the Court's CM/ECF filing system, and that service of same is made on the persons listed below via the Court's electronic filing system.

Gus David Oppermann V, Esq.
WHEAT OPPERMANN PLLC
1722 Heights Boulevard
Houston, Texas 77008
(713) 861-8585 – Telephone
(713) 861-3189 – Facsimile
gdo@wom-law.com
wberlanga@wom-law.com
**ATTORNEYS FOR THIRD-PARTY PLAINTIFF GSD MARINE, LLC**

Robert C. Oliver, Esq.
SHARPE & OLIVER, LLP
5535 Memorial Drive, Suite F570
Houston, Texas 77007
(713) 864-2221 – Telephone
(713) 864-2228 – Facsimile
macknife@macknife.net
**ATTORNEYS FOR PLAINTIFF CEDAR BAYOU TOWING LIMITED LIABILITY COMPANY**

David R. Walker, Esq.
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1600 Smith Street, Suite 5000
Houston, Texas 77002–7380
(713) 224–8380 – Telephone
(713) 225-9945 – Facsimile
david.walker@roystonlaw.com
**ATTORNEY FOR DEFENDANTS, G & H TOWING COMPANY, BAY HOUSTON TOWING COMPANY AND BAY HOUSTON MARITIME INDUSTRIES, INC.**

Ronald L. White, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
909 Fannin Street, Suite 3300
Houston, Texas 77010
(713) 353–2000 – Telephone
(713) 785-7780 – Facsimile
ronald.white@wilsonelser.com
**ATTORNEYS FOR DEFENDANT BUFFALO MARINE SERVICE, INC.**

/s/ Mary K. Cryar
Mary K. Cryar